STATE of Tennessee, Appellee,

v.

Randall KEEL, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

April 28, 1994.

Permission to Appeal Denied by Supreme Court Aug. 8, 1994.

---

Charles W. Burson, Atty. Gen. & Reporter, John B. Nisbet, III, Asst. Atty. Gen., Nashville, W. Michael McCown, Dist. Atty. Gen., Fayetteville, Weakley E. Barnard, Asst. Dist. Atty. Gen., Lewisburg, Gary M. Jones, Asst. Dist. Atty. Gen., Shelbyville, for appellee.

John E. Herbison, Nashville (Appeal Only), Robert H. Stovall, Jr., Asst. Public Defender, Fayetteville (Trial Only) (John H. Dickey, Dist. Public Defender, Fayetteville, of counsel), for appellant.

## OPINION

JONES, Judge.

The appellant, Randall Keel, was convicted of five (5) counts of selling cocaine and one (1) count of conspiring to sell cocaine by a jury of his peers. The trial court found that the appellant was a standard offender and imposed the following Range I sentences:

a) Count 1, sale of cocaine, a Class C felony, a fine of $5,000 and confinement for three (3) years and six (6) months in the Department of Correction;

b) Count 2, conspiracy to sell cocaine, a Class D felony, a fine of $5,000 and confinement for two (2) years and (4) months in the Department of Correction;

c) Count 3, sale of cocaine, a Class C felony, a fine of $5,000 and confinement for three (3) years and six (6) months in the Department of Correction;

d) Count 5, sale of cocaine, a Class C felony, a fine of $5,000 and confinement for four (4) years and (6) months in the Department of Correction;

e) Count 7, sale of cocaine, a Class B felony, a fine of $5,000 and confinement for nine (9) years in the Department of Correction; and

f) Count 9, sale of cocaine, a Class B felony, a fine of $5,000 and confinement for nine (9) years and six (6) months in the Department of Correction.

The trial court ordered the sentences to be served concurrently. The effective sentence imposed by the trial court consists of fines totalling $30,000 and confinement for nine (9) years and six (6) months in the Department of Correction.

Four issues are presented for review. The appellant contends that the evidence is insufficient, as a matter of law, to support a finding by a rational trier of fact that he is guilty of conspiring to sell cocaine beyond a reasonable doubt.[1] He further contends that the trial court committed error of prejudicial dimensions in charging the jury on the elements of a conspiracy, imposing an excessive sentence, and refusing to grant him an alternative sentence.

The judgment of the trial court is affirmed.

## I.

The record reflects that a co-defendant, Glen Miller, was a construction contractor. The appellant, a carpenter, worked for Miller during the period in question. Miller took the appellant to work in the morning and took him home in the afternoon.

The appellant gave police a statement that he had been "dealing" in drugs for approximately a year prior to his arrest on December 19, 1991. He testified that he purchased cocaine from Miller for his personal use. He also testified that the cocaine he sold to Tammy Prentiss, who was assisting the Seventeenth Judicial District Drug Task Force, and Robert Jacobs, a member of the Task Force, was obtained from Miller.

On the evening of October 4, 1991, Prentiss and Roberts drove to a parking lot across the street from the appellant's residence. Prentiss walked across the street to the residence, met the appellant, and told him she wanted to purchase $35 worth of cocaine. The appellant advised her that he would have to go get the cocaine. Prentiss gave the appellant $40 and accompanied him to the Ridgetop Apartments. She stayed in the vehicle while the appellant went to Miller's apartment to obtain the cocaine. In a

matter of minutes the appellant returned with the cocaine. When he gave Prentiss the cocaine, he told her that he had "bumped the bag," meaning he had consumed a small quantity of the cocaine.

Prentiss made additional purchases from the appellant. On November 8, 1991, she purchased $50 worth of cocaine. On December 11, 1991, she purchased $300 worth of cocaine from the appellant. On November 21, 1991, Jacobs personally purchased $50 worth of cocaine from the appellant. He also purchased $300 worth of cocaine from the appellant on December 19, 1991. The appellant testified that he "bumped the bag" on each of these occasions. On December 19, 1991, he admitted that Miller gave him $20 "for gas." There was $20 missing from the marked money found in Miller's apartment when members of the Drug Task Force executed a search warrant that evening.

The Marshall County Grand Jury returned a twelve count indictment charging the appellant with five substantive counts of selling cocaine. There was one count for each sale the appellant made to Prentiss and Jacobs. In addition, the appellant was charged in five additional counts of conspiring to sell cocaine. In three of the conspiracy counts, it was alleged that the appellant and Miller conspired to sell cocaine. In two of the conspiracy counts, it was alleged that the appellant, Miller, and Paul Keel, the appellant's brother, conspired to sell cocaine. The appellant was convicted of the five substantive offenses of selling cocaine. He was also convicted of the five conspiracy counts. The trial court subsequently dismissed four of the conspiracy counts.

The conspiracy count of which the appellant stands convicted alleges:

THE GRAND JURORS of Marshall County, Tennessee, duly empaneled and sworn, upon their oath, present that:

Randall Keel

Glen Miller

On the 4th day of October, 1991, in Marshall County, Tennessee, before the finding

---

1. The appellant does not challenge the sufficiency of the convicting evidence in the five substantive counts, namely, Counts 1, 3, 5, 7 and 9.

of this indictment, unlawfully and feloniously did agree with another that one or more of them would engage in conduct that constitutes the offense of Sale of a Controlled Substance to wit: Cocaine, TCA 39–17–417, with each having the culpable mental state required for the commission of that offense and with each for the purpose of promoting or facilitating the commission of the offense, in that Randall Keel did meet and discuss with a confidential informant of the Seventeenth Judicial District Drug Task Force the sell [sic] of a quantity of cocaine to the confidential informant and received money from the said confidential informant for the purpose of selling to the said confidential informant Cocaine and then delivering the said cocaine to the said confidential informant thereby, committing an overt act in pursuant of the conspiracy, the said Glen Miller did supply to the said Randall Keel the cocaine which was then sold to the said confidential informant, thereby, committing an overt act in pursuant of the conspiracy, in violation of Tennessee Code Annotated Section 39–12–103, and against the peace and dignity of the State of Tennessee.

In the Issues Presented for Review section of his brief, the appellant presents the following issue: "Whether the evidence is sufficient for any rational trier of fact to find beyond a reasonable doubt that the particular conspiracy alleged in Count Two of the indictment existed." However, in the Argument section of his brief, the appellant poses the issue as follows: "The proof at trial indicates a fatal variance from the conspiracy allegations of Count Two of the indictment." Neither of

these issues were raised in the motion for a new trial or the amended motion for a new trial.

The state contends that the appellant has waived this issue because it was not included in the motion for a new trial. Tenn.R.App.P. 3(e). In the alternative, the state argues the appellant has failed to establish that there was a variance, or if there was a variance, it was neither material nor prejudicial to the appellant. In his reply brief, the appellant contends that he has a right in this Court to pursue this issue, notwithstanding the fact it was not raised in the motion for a new trial. He argues that if this Court finds there is a material variance, the remedy is dismissal, as opposed to the granting of a new trial.

## A.

The determination of whether this issue has been waived hinges upon the interpretation of Rule 3(e), Tennessee Rules of Appellate Procedure. This rule provides in part:

[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived. . . .

The initial draft of the Tennessee Rules of Appellate Procedure did not provide for the waiver of issues which were not included in a motion for a new trial.[2] Both the trial judges

---

2. J. Sobieski, Jr., *The Theoretical Foundations of the Proposed Tennessee Rules of Appellate Procedure*, 45 Tenn.L.Rev. 161, 185–186 (1978). *See Proposed Tennessee Rules of Appellate Procedure*, 45 Tenn.L.Rev. 271, 281–284 (1978).

The Advisory Commission Comment to proposed Rule 3(e) stated:

This subdivision also eliminates certain highly technical procedural barriers that traditionally have been prerequisites to an appeal or affected the scope of appellate review. Thus, *motion for a new trial*, motion in arrest of judgment, prayer for an appeal, entry of an order permitting an appeal, and all other similar procedures *are no longer considered prerequisites to*

taking an appeal. So too, *the scope of appellate review on matters of both law and fact is wholly unaffected by making or failing to make a motion for a new trial.*
*Proposed Tennessee Rules of Appellate Procedure, supra,* at 283–284 (emphasis added).

Professor Sobieski, the reporter for the advisory committee responsible for drafting the Tennessee Rules of Appellate Procedure, *stated in his article:*

The rules additionally eliminate any requirement of moving for a new trial as a prerequisite to review in jury cases. Ideally, new trial motions serve the laudable purpose of reducing the number of appeals by affording the

and the appellate judges expressed dissatisfaction with the proposed rule. The trial judges wanted the opportunity to consider an alleged error before the initiation of the appellate process. The appellate judges likewise wanted the trial court to have the opportunity to consider the alleged errors; and they wanted a record to be created with regard to the errors.[3] Thus, the rule was amended prior to its adoption.

■ In criminal cases, the phrase "upon which a new trial is sought" is pivotal when determining whether a party has waived an issue by failing to include it in a motion for a new trial. This Court has held that the failure to file a motion for a new trial, the late filing of a motion for a new trial, and the failure to include an issue in a motion for a new trial results in waiver of all issues which, if found to be meritorious, would result in the granting of a new trial.[4] The waiver provision of Rule 3(e), however, does not apply when the issue, if found to be meritorious, would result in the dismissal of the prosecution against the accused.[5]

> trial court an opportunity to correct any harmful error. It can also be argued that fairness requires providing the trial court a final opportunity to correct its errors. Realistically, however, new trial motions are seldom granted and typically only increase the cost and delay final disposition of litigation.
> J. Sobieski, Jr., *supra,* at 185–186 (footnotes omitted).

**3.** In *Mason v. Tennessee Farmers Mut. Ins. Co.,* 640 S.W.2d 561, 563 (Tenn.App.1982), *per. app. denied,* June 21, 1982, the Court of Appeals said: "[T]he reason [for Rule 3(e)] is to allow the trial court to rectify any errors that might have been made at trial and to avoid 'appeal by ambush.'"

**4.** *See, e.g., State v. Clinton,* 754 S.W.2d 100, 103 (Tenn.Crim.App.1988) (proof of an unrelated crime); *State v. Frahm,* 737 S.W.2d 799, 801 (Tenn.Crim.App.1987) (constitutionality of a statute); *State v. Scott,* 735 S.W.2d 825, 829 (Tenn. Crim.App.1987) (proof of the victim's flirtatious conduct); *State v. Mayo,* 735 S.W.2d 811, 816–817 (Tenn.Crim.App.1987) (cross-examination of a witness and summation of prosecutor); *State v. Jones,* 733 S.W.2d 517, 524 (Tenn.Crim.App. 1987) (instruction on malice); *State v. Weeden,* 733 S.W.2d 124, 125 (Tenn.Crim.App.1987) (direct examination of prosecution witness and state impeaching own witness); *State v. Moffett,* 729 S.W.2d 679, 682 (Tenn.Crim.App.1986) (proof of another crime); *State v. Wiggins,* 729

The ultimate question which this Court must resolve in determining whether there has been a waiver is: Will a favorable resolution of the issue posed by the appellant result in the granting of a new trial or the dismissal of the prosecution against the appellant?

### B.

■ When the evidence adduced at a trial does not correspond to the elements of the offense alleged in the charging instrument, there is a variance. Generally, the evidence establishes the commission of an offense different from the offense alleged in the charging instrument.[6] The variance rule is predicated upon the theory that an accused cannot be charged with one offense and convicted of a completely different offense.[7]

■ When a variance occurs, the proof is insufficient, as a matter of law, to support the offense alleged in the charging instrument. Thus, the accused is entitled to have the conviction reversed and the prosecution dismissed.[8]

S.W.2d 291, 294 (Tenn.Crim.App.1987) (summation of prosecutor); *State v. Phillips,* 728 S.W.2d 21, 27 (Tenn.Crim.App.1986) (testimonial marital privilege); *State v. Hurley,* 712 S.W.2d 493, 495. (Tenn.Crim.App.1986) (special request for an instruction); *State v. Moses,* 701 S.W.2d 629, 631 (Tenn.Crim.App.1985) (pretrial motion to suppress); *State v. Burrus,* 693 S.W.2d 926, 930 (Tenn.Crim.App.1985) (trial court's comment on the evidence); *State v. Grady,* 619 S.W.2d 141, 143 (Tenn.Crim.App.1980) (competency of minor witness).

**5.** *See, e.g., State v. Davis,* 748 S.W.2d 206, 207 (Tenn.Crim.App.1987) (sufficiency of the indictment and evidence); *State v. Moore,* 713 S.W.2d 670, 673, 674 (Tenn.Crim.App.1985) (sufficiency of the evidence); *State v. Durham,* 614 S.W.2d 815, 816 n. 1 (Tenn.Crim.App.1981) (sufficiency of the evidence).

**6.** *See, e.g., McLean v. State,* 527 S.W.2d 76, 81 (Tenn.1975); *Brown v. State,* 162 Tenn. 639, 641–642, 39 S.W.2d 746, 747 (1931).

**7.** *McLean v. State,* 527 S.W.2d at 81–82; *Brown v. State,* 162 Tenn. at 642, 39 S.W.2d at 747; *Nunley v. State,* 479 S.W.2d 836, 840 (Tenn.Crim. App.1972) (Oliver, J., dissenting).

**8.** *McLean v. State,* 527 S.W.2d at 81–82; *Brown v. State,* 162 Tenn. at 642, 39 S.W.2d at 747.

Since the relief to be granted when a variance occurs is the dismissal of the prosecution, the waiver provision contained in Rule 3(e) is not applicable. Thus, this issue will be considered on the merits.

### C.

As previously stated, the appellant was tried and convicted of the five substantive counts and the five conspiracy counts. The trial court determined post-trial that there was only one conspiracy; and the court dismissed the conspiracy counts contained in Counts four, six, eight and ten. Thus, the only issue presented is whether there is a material variance between the allegations contained in Count two of the indictment and the evidence introduced at the trial.[9]

Based upon a thorough review of the record, this Court finds that there was no variance. As previously stated, the appellant had been "dealing" with Miller for approximately one year. He referred to Miller as "his man." He worked for Miller and travelled to and from work with Miller every day. The cocaine involved in the transactions,[10] including the transaction of October 4, 1991, was obtained from Miller. The appellant admitted "bumping the bag" on each transaction. Furthermore, it can be reasonably inferred from the evidence that the appellant received monetary compensation from Miller in addition to "bumping the bag." The appellant candidly admitted that he considered "bumping the bag" consideration for the transaction.

This issue is without merit.

### II.

The trial court charged the jury on the elements of a conspiracy. The specific portion of the instruction attacked by the appellant states: "(1) That the defendant entered into an agreement *with one or more people* to commit the offense of Sale of a Controlled Substance. It is not necessary that the object of the agreement be attained" (emphasis added). The appellant contends that this language "is inconsistent with the identification in the indictment of [a] conspiracy between two particular, named individuals," namely, the appellant and Glen Miller. The appellant opines that the jury might have convicted him of entering into an agreement with Tammy Prentiss or Robert Jacobs.

Defense counsel did not submit a special request. Nor did counsel make an effort before, during or after the instruction to have the trial court give a more specific instruction. Furthermore, this issue was not included in the motion for a new trial or the amended motion for a new trial.

[9] This issue has been waived. As previously noted, Rule 3(e), Tennessee Rules of Appellate Procedure, provides in part that "in all cases tried by a jury, no issue presented for review shall be predicated upon error ... upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived...." This Court has consistently held that issues concerning instructions given or refused by the trial court are

---

9. The appellant contends that he was entitled to a motion for judgment of acquittal at the conclusion of the state's case. A motion for judgment of acquittal was made by defense counsel. The question of variance was not raised.

When the trial court denied the appellant's motion for judgment of acquittal, he opted to testify in support of his defense. This constituted a waiver of his claim that he was entitled to a judgment of acquittal at the conclusion of the state's proof. *See State v. Adkins*, 786 S.W.2d 642, 644 (Tenn.1990); *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn.1979); *State v. Matthews*, 805 S.W.2d 776, 781 (Tenn.Crim.App.1990); *State v. Harper*, 753 S.W.2d 360, 363 (Tenn.Crim. App.1987); *State v. Chadwick*, 750 S.W.2d 161,

163 (Tenn.Crim.App.1987); *State v. Smith*, 735 S.W.2d 859, 862 (Tenn.Crim.App.1987); *State v. Walker*, 713 S.W.2d 332, 333 (Tenn.Crim.App. 1986); *State v. Carter*, 681 S.W.2d 587, 588 (Tenn.Crim.App.1984); *State v. Copeland*, 677 S.W.2d 471, 473–474 (Tenn.Crim.App.1984).

This Court will consider whether the appellant was entitled to the entry of a motion for judgment of acquittal at the conclusion of all the evidence due to a variance.

10. The subsequent cocaine transactions are relevant as well as probative of whether a conspiracy existed on October 4, 1991. In addition, the appellant's judicial admissions and admissions to the police are both relevant and probative in making this determination.

waived if the issues were not included in the motion for a new trial.[11]

This issue is without merit.

## III.

The appellant contends that the sentences imposed by the trial court were excessive. He argues that the trial court erroneously applied certain enhancement factors and failed to consider several mitigating factors. He also contends that the trial court erred in refusing to impose an alternative sentence.

### A.

When the accused challenges the length and manner of serving a sentence, it is the duty of this Court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." [12] However, there are exceptions to this requirement. First, the requirement that this Court presume the determinations made by the trial court are correct is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." [13] Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused.[14] Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts or a document, such as the presentence report.[15]

In conducting a *de novo* review of a sentence, this Court must consider: (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating and enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation.[16]

When the accused raises sentencing issues in this Court, the accused has the burden of establishing that the sentences imposed by the trial court were erroneous.[17] In this case, the appellant has the burden of establishing that the trial court erroneously (a) considered the enhancement factors, (b) failed to consider the mitigating factors, and (c) failed to impose an alternative sentence.

### B.

The trial court found that there were four enhancement factors present, namely, the appellant has a previous history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range,[18] the appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community,[19] the appellant had no hesitation about committing a crime when the risk to human life was high,[20] and the appellant committed the crime under circumstances where the potential for bodily injury

11. *See State v. Caldwell,* 671 S.W.2d 459, 465 (Tenn.), *cert. denied,* 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160 (1984); *State v. Jones,* 733 S.W.2d 517, 524 (Tenn.Crim.App.1987); *State v. Jones,* 729 S.W.2d 683, 685 (Tenn.Crim.App. 1986); *State v. Hurley,* 712 S.W.2d 493, 495 (Tenn.Crim.App.1986); *State v. Woodson,* 705 S.W.2d 677, 680 (Tenn.Crim.App.1985); *State v. Griffith,* 649 S.W.2d 9, 11 (Tenn.Crim.App.1982); *State v. Ingram,* 638 S.W.2d 428, 430 (Tenn. Crim.App.1982).

12. Tenn.Code Ann. § 40–35–401(d).

13. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991).

14. *State v. Bonestel,* 871 S.W.2d 163 (Tenn.Crim. App.1993).

15. *State v. Bonestel, supra.*

16. *See* Tenn.Code Ann. §§ 40–35–103 and – 210(b); *State v. Scott,* 735 S.W.2d 825, 829 (Tenn.Crim.App.1987).

17. Sentencing Commission Comments to Tenn. Code Ann. § 40–35–401(d); *State v. Ashby,* 823 S.W.2d at 169; *State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn.Crim.App.1991).

18. Tenn.Code Ann. § 40–35–114(1).

19. Tenn.Code Ann. § 40–35–114(8).

20. Tenn.Code Ann. § 40–35–114(10).

to a victim was great.[21] The trial court found that there were no mitigating factors contained in the record.

## (1)

The appellant contends that his prior criminal convictions and behavior are "relatively minor." While admitting that he had been recently convicted of two misdemeanor offenses and he had a pattern of possessing cocaine for personal use, he argues that this enhancement factor "should be entitled to very little weight." The record reflects an extensive history of criminal convictions and criminal behavior.

The record reflects convictions for harassment, reckless driving, and two counts of driving while under the influence. The appellant forfeited a cash bond after being charged with two counts of public drunkenness and leaving the scene of an accident. He was also arrested for two counts of assault. An assault on a juvenile was dismissed upon payment of court costs. The second assault count was held in abeyance for a period of time.

The appellant told a police officer that he had been "dealing" in cocaine for approximately one year. He admitted to the presentence officer that he had been a user of cocaine for approximately four years. When he testified at the sentencing hearing, he admitted being a user of cocaine for "a couple of years." He also admitted during cross-examination that he had purchased cocaine for personal consumption following his arrest for the offenses of which he stands convicted. He consumed between $150 and $200 worth of cocaine weekly. Each purchase of cocaine constituted a separate offense.

■ The trial court was justified in affording great weight to this enhancement factor. As can be seen, the appellant was convicted for several criminal offenses; and his criminal behavior has been extensive.

This behavior admittedly continued following his arrest in this case.

## (2)

The appellant admits that he was on probation for two misdemeanor offenses when he committed the offenses in question. However, he contends that the trial court should not have considered enhancement factor (8), namely, his unwillingness to comply with the conditions of the two sentences that involved release into the community. He argues that the state failed to prove the conditions of probation.

A judge may revoke a suspended sentence whenever he learns that the accused "has been guilty of any breach of the laws of this state."[22] This Court has previously held that this statutory provision "automatically makes compliance with state law a condition of probation."[23]

■ The evidence at the trial and the sentencing hearing support enhancement factor (8). Each purchase and possession of cocaine for personal use following the grant of probation constituted a violation of state law. These multiple violations established the appellant's history of unwillingness to comply with the conditions of the two sentences involving release into his community.

## (3)

The trial court applied enhancement factors (10) and (16) based upon "the nature and character" of cocaine. The trial court cited this Court's holding in State v. Milibrooks[24] as authority for applying both factors. The appellant contends that the "nature and character" of cocaine, standing alone, should not be used to enhance a sentence for an offense involving cocaine. The state does not address this issue.

In Millbrooks, the accused, as in this case, sold cocaine to undercover police officers. She was convicted of possessing cocaine with the intent to deliver; and the trial court,

21. Tenn.Code Ann. § 40-35-114(16).

22. Tenn.Code Ann. § 40-35-311(a).

23. State v. Shannon Lee Beckner, Sullivan County No. 923, 1991 WL 43545, *5 slip op. at 5 (Tenn. Crim.App., Knoxville, April 2, 1991).

24. 819 S.W.2d 441 (Tenn.Crim.App.1991).

finding that she was a standard offender, imposed a Range I sentence consisting of a $5,000 fine and six (6) years confinement in the Shelby County Correctional Center. In affirming the sentence imposed by the trial court, this Court said:

> As enhancement factors the appellant has a previous history of criminal convictions or criminal behavior. T.C.A. § 40–35–114(1). She has had a number of misdemeanor convictions in state and federal courts for drug related offenses. As an additional enhancement factor, the trial judge found that she had no hesitation in committing a crime where the risk to human life was high. T.C.A. § 40–35–114(10). Considering the potency of crack cocaine, it certainly can be said that there is a high risk to human life from the distribution of that substance. It can also be said that the crime involved great potential for bodily injury, T.C.A. § 40–35–114(16), since the use of crack cocaine is, without a doubt, injurious to the human body.[25]

Millbrooks did not apply for permission to appeal to the Supreme Court.

This Court has reached an opposite result in two unreported opinions.[26] In both cases the Supreme Court denied the accused's application for permission to appeal.

In *State v. Timmy Ricker*, [27] the accused, like the appellant in this case, sold cocaine and another drug to an undercover informant. Ricker was convicted of possessing Schedule I and Schedule VI controlled substances with intent to deliver. The trial court applied enhancement factor (10) in determining Ricker's sentence. This Court held that this factor should not have been applied. In ruling, Judge Birch, now Justice Birch, stated: "We think that the legislature sufficiently incorporated this factor into its

drug classification schedule, and again in the sentencing act." [28]

In *State v. Marshall,* [29] the accused was convicted of possessing cocaine with the intent to sell, a Class B felony. The trial court, finding that the appellant was a standard offender, imposed a Range I sentence consisting of a fine of $10,000 and twelve (12) years confinement in the Department of Correction. The trial court applied enhancement factor (10) in determining Marshall's sentence. This Court held that the trial court should not have used this factor to enhance Marshall's sentence. In ruling, Judge Tipton, speaking for a unanimous court, said:

> As to factor (10), regarding [the] commission of a crime where the risk to human life is high, the trial court found it applicable because of the "nature of cocaine itself." The defendant complains that using cocaine's nature, without more, to enhance a sentence under factor (10) is barred by T.C.A. § 40–35–114 because the nature of cocaine is essentially an element of the offense. The state responds that this factor applies because cocaine is "a highly addictive substance which imposes a high risk to human life." We conclude that the trial court could not use the inherent traits of cocaine to enhance the sentence under factor (10) given the facts in this case. Controlled substances have been placed into schedules according to their respective potential for abuse and resulting dangers. By cocaine being designated as a Schedule II controlled substance, it has necessarily been found to have a "high potential for abuse" which "may lead to severe psychic or physical dependence." T.C.A. § 39–17–407. By providing different punishments for the respective schedules, it is apparent that the legislature has already considered the inherent nature of the various drugs in its setting of punishment. In fact, the legislature has singled out cocaine felonies,

---

**25.** 819 S.W.2d at 446–447.

**26.** *State v. Marshall,* 870 S.W.2d 532 (Tenn.Crim. App.1993), *per. app. denied,* September 7, 1993; *State v. Timmy Ricker,* Hamblen County No. 269, 1989 WL 239 (Tenn.Crim.App., Knoxville, January 4, 1989), *per. app. denied,* May 8, 1989.

**27.** Hamblen County No. 269, 1989 WL 239 (Tenn.Crim.App., Knoxville, January 4, 1989), *per. app. denied,* May 8, 1989.

**28.** *State v. Timmy Ricker, supra,* slip op. at 8 (footnotes omitted).

**29.** 870 S.W.2d 532 (Tenn.Crim.App.1993), *per. app. denied,* September 7, 1993.

in the quantity involved in this case, to be treated as Class B felonies. T.C.A. § 39–17–417(c)(1) (Supp.1992).

The reasoning adopted by the trial court in this case to apply factor (10) would exist in every felony involving a Schedule II drug, particularly cocaine. If used in such a fashion, the presumptive minimum required by T.C.A. § 40–35–210(c) would never apply in Schedule II felony cases. We do not believe that the legislature intended such a result absent clear language to the contrary. Thus, this enhancement factor does not apply in this case.[30]

 This Court agrees with the holdings in *Ricker* and *Marshall*. The trial court should not have used enhancement factor (10), for the reasons set forth in the *Ricker* and *Marshall* opinions. The same reasoning is applicable to enhancement factor (16).

In the case of *State v. Michael S. Hurt,*[31] the accused entered pleas of guilty to the sale of cocaine and the possession of cocaine with intent to sell. The trial court imposed fines totalling $5,000 and confinement for ten (10) years in the Department of Correction in each case. Hurt, contending that the ten (10) year sentence in each case was excessive, argued "that the trial court erred in applying as an enhancement factor that the circumstances of the crime created a potential for bodily injury to a victim which was great."[32] The trial court applied this factor based upon the dangerous nature of cocaine. In holding that the trial court should not have applied this factor, Judge Tipton, speaking for a unanimous court, said:

As to the application of the enhancement factor regarding the circumstances of the crime creating a great potential for bodily injury to a victim, ... the trial court essentially concluded that because the legislature has deemed cocaine, as all other Schedule II substances, a dangerous drug, its sale brings this factor into play....

Controlled substances have been placed into schedules according to their respective potential for abuse and resulting dangers. By cocaine being designated as a Schedule II controlled substance, it has necessarily been found to have a "high potential for abuse" which "may lead to severe psychic or physical dependence." T.C.A. § 39–17–407. By providing different punishments for the respective schedules, it is apparent that the legislature has already considered the inherent nature of the various drugs in its setting of punishment. In fact, the legislature has singled out cocaine felonies, in the quantities involved in this case, to be treated as Class B felonies. T.C.A. § 39–17–417(c)(1).

\* \* \* \* \* \*

Under the circumstances shown by the record, the reasoning adopted by the trial court to apply factor (16) would exist in every felony involving a Schedule II drug, particularly cocaine. If used in such a fashion, the presumptive minimum required by T.C.A. § 40–35–210(c) would never apply in Schedule II felony cases. We do not believe that the legislature intended such a result absent clear language to the contrary. Thus, the trial court should not have relied solely upon the inherent traits of cocaine to apply factor (16) under the facts in this case.[33]

Consequently, the trial court should not have applied enhancement factor (16), based on the facts in this case.

The holdings of this Court in *Ricker, Marshall, Hurt,* and this case, do not exclude, as a matter of law, the application of enhancement factors (10) and (16) when an accused has been convicted of an offense involving a Schedule II controlled substance. To the contrary, this Court can conceive of factual scenarios that would warrant a trial court in applying one or both enhancement factors in a Schedule II controlled substance case. These decisions stand for the simple proposition that a trial court is not warranted in using these factors to enhance a sentence

---

30. *State v. Marshall,* 870 S.W.2d at 542.

31. Marshall County No. 01–C–01–9306–CC–00189, 1993 WL 503713 (Tenn.Crim.App., Nashville, December 9, 1993).

32. *State v. Michael S. Hurt, supra,* slip op. at 2. *See* Tenn.Code Ann. § 40–35–114(16).

33. *State v. Michael S. Hurt, supra,* slip op. at 3.

involving a Schedule II controlled substance due to the "nature and circumstances" of the substance.

## C.

The appellant contends that the record supports several mitigating factors that the trial court refused to consider. He contends that his criminal conduct neither caused nor threatened serious bodily injury,[34] that substantial grounds existed tending to excuse or justify his criminal conduct, though failing to establish a defense,[35] that he assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses,[36] and that he has no prior felony record,[37] a "fairly stable employment history,"[38] is a "lifelong resident of his community with family in Lewisburg and Chapel Hill,"[39] and did not "profit financially from his offenses."[40]

The trial court properly refusal to consider the enumerated mitigating factors.

This Court has held that mitigating factor (1) is not applicable in these cases.[41]

■ The appellant's contention that substantial grounds existed to excuse or justify his conduct within the meaning of mitigating factor (3) is not supported by the record.

He argues that "the police conduct here is characteristic of the kind of conduct often found in entrapment cases." The conduct of the investigation in this case was no different than the conduct of law enforcement officers in literally hundreds of cases that have been reviewed by this Court. The tape recordings of the transactions do not indicate that either Prentiss or Jacobs engaged in such conduct. These two individuals simply gave the appellant an opportunity to sell cocaine to them. The appellant freely and voluntarily accepted the opportunity if for no other reason than to

"bump the bag." His statement to the police indicates that he received "extra" cocaine for arranging the sales; and he received monetary compensation from Miller on at least one occasion. There is no dispute that the appellant had been purchasing cocaine from Miller for approximately one year; and he had been "dealing" in cocaine for that period of time.

■ The appellant did not assist the Drug Task Force as contemplated by mitigating factor (9). After his arrest, the search of Miller's apartment, the seizure of cocaine, drug paraphernalia, and the marked money that the appellant used to purchase the cocaine on the evening of December 19, 1991, and Miller's arrest, the appellant gave two very short statements to the police. All of the facts contained in the statements were known to the officers due to the involvement of Prentiss and Jacobs, the recordation of their respective conversations with the appellant, and the surveillance of other members of the Drug Task Force. The appellant recanted portions of the statements when he testified in support of his defense. In short, the statements did not assist officers in apprehending Miller, prosecuting Miller, or detecting Miller's supplier.

■ While the appellant had not previously been convicted of a felony prior to his convictions in this case, this is not a legitimate reason to mitigate his sentence. The vast majority of the citizens residing in this state do not have a prior felony conviction. If this Court permitted an accused's sentence to be mitigated for this reason, it would be inviting the criminal element of our society to engage in criminal conduct punishable as a misdemeanor. If by chance one of the criminal element was arrested and convicted of a felony, the sentence would be reduced because there would be no prior history of a

34. Tenn.Code Ann. § 40–35–113(1).

35. Tenn.Code Ann. § 40–35–113(3).

36. Tenn.Code Ann. § 40–35–113(9).

37. Tenn.Code Ann. § 40–35–113(13).

38. Tenn.Code Ann. § 40–35–113(13).

39. Tenn.Code Ann. § 40–35–113(13).

40. Tenn.Code Ann. § 40–35–113(13).

41. *State v. Larry D. Jones,* Davidson County No. 01–C–01–9112–CR–00368, 1992 WL 146719 (Tenn.Crim.App., Nashville, June 30, 1992), *per. app. denied,* October 26, 1992.

felony conviction. Here, the appellant was on probation for two misdemeanor offenses. He admitted at the trial and at the sentencing hearing that he had continuously violated the law notwithstanding the conditions of probation. In addition, the appellant has an extensive history of criminal convictions and criminal behavior as previously indicated. He is not entitled to have his sentence reduced for this reason.

■ The fact that the appellant had a "fairly stable employment history" and was a "lifelong resident of his community with family living in Lewisburg and Chapel Hill" does not entitle him to a reduction in his sentence. If this Court permitted a reduction in an accused's sentence for this reason, the message would be sent to the criminal element of our state that if you have a "fairly" good work record and you commit crime in your own community, your sentence will be reduced.

Every citizen in this state is expected to have a stable work history if the economy permits the citizen to work, the citizen is not disabled, or the citizen is not independently wealthy. While it is admirable the appellant continues to live in the community where his family resides, it was an insult to his community when he engaged in the criminal conduct in question.

■ The appellant did profit from the sales in question. He testified that "bumping the bag" was adequate compensation. In addition, he admitted to the police that he received "extra" cocaine from Miller for arranging the sales. He also admitted that he received monetary compensation—part of the money Jacobs gave him to purchase the cocaine on December 19, 1991.

### D.

■ The mere fact that this Court has found the trial court erroneously applied enhancement factors (10) and (16) does not mean the appellant is entitled to have his sentence reduced. The appellant's extensive history of prior convictions and criminal behavior, the fact that he was on probation when he committed these offenses, and the number of sales the appellant made to Pren-

tiss and Jacobs justify the sentences imposed by the trial court. Moreover, the sentences imposed in these cases are consistent with the sentences approved in other cases.

■ The length of the sentences in Counts 7 and 9 make the appellant ineligible for alternative sentencing.

WADE and WHITE, JJ., concur.