# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## MAY 1999 SESSION



**FILED**

**June 18, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 02C01-9807-CC-00218** |
| Appellee, | ) | |
| | ) | **DYER COUNTY** |
| VS. | ) | |
| | ) | **HON. J. STEPHEN STAFFORD,** |
| **LARRY D. JOHNSON,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Possession of Cocaine with Intent to Sell or Deliver) |

FOR THE APPELLANT:                  FOR THE APPELLEE:

**C. MICHAEL ROBBINS**                 **PAUL G. SUMMERS**
46 North Third St., Suite 719         Attorney General & Reporter
Memphis, TN 38103
     (On Appeal)                         **J. ROSS DYER**
                                        Asst. Attorney General
**G. STEPHEN DAVIS**                    John Sevier Bldg.
District Public Defender             425 Fifth Ave., North
P.O. Box 742                          Nashville, TN 37243-0493
Dyersburg, TN 38024
     (At Trial)                           **C. PHILLIP BIVENS**
                                          District Attorney General

                                          **JAMES E. LANIER**
                                          Asst. District Attomey General
                                          P.O. Drawer E
                                          Dyersburg, TN 38024

OPINION FILED:_____

**AFFIRMED**

**JOHN H. PEAY,**
Judge

**O P I N I O N**

The defendant was charged with possession of over one-half ounce of marijuana with intent to sell or deliver and possession of over one-half gram of cocaine with intent to sell or deliver. He pled guilty to the marijuana charge in exchange for a one-year sentence and a two thousand dollar ($2000) fine. He waived his right to a jury trial on the cocaine charge and, following a bench trial, was found guilty on the cocaine charge and sentenced to eight years in the Department of Correction. He now appeals, arguing that the cocaine conviction should be vacated because his arrest was invalid. He also argues that the trial court erred in denying alternative sentencing. Finding no error, we affirm.

On June 2, 1997, Officer Frederick Tates was on routine patrol in Dyersburg when he observed two women arguing with a man, later identified as the defendant, at the residence of 607 Peabody. Officer Tates knew the two women and that they lived at 607 Peabody, but he did not know the defendant. Suspecting a domestic disturbance in progress, he stopped his patrol car, at which point the defendant fled the scene. Officer Tates briefly talked with the women, who confirmed that the defendant had caused a disturbance there. Officer Tates then left the scene to search for the defendant and found him approximately one block away. After telling the defendant he was detaining him in order to conduct a domestic violence investigation, Officer Tates handcuffed the defendant, placed him in the back of his patrol car, and transported him back to 607 Peabody. Upon their return, he removed the handcuffs and left him with a back-up officer while he interviewed the two women.

While interviewing the women, Officer Tates observed the defendant walking in circles with his hands in his pockets, which he testified officers generally do not allow for safety reasons. Officer Tates interrupted his interview, approached the defendant, briefly questioned him, and asked him to face the patrol car while he

conducted a pat-down search. During the pat-down search, Officer Tates felt a large bulge in the defendant's front pocket. He asked the defendant what was in his front pocket. Rather than speaking, the defendant removed several plastic bags of marijuana from his pocket. Officer Tates then placed the defendant under arrest, Mirandized him, and handcuffed him. During a search incident to arrest, Officer Tates found several rocks of crack cocaine in the small watch pocket of the defendant's jeans. No paraphernalia was found. Later, a police investigator asked the defendant if he smoked crack or marijuana, and the defendant replied no.

The defendant now argues that the defendant was in custody when he was transported back to 607 Peabody. According to the defendant, by asking him what was in his pocket, Officer Tates engaged in conduct he should have known was reasonably likely to elicit an incriminating response. Although he made no verbal response, the defendant argues, his conduct was communicative in nature. The defendant contends, therefore, that because he was not read his Miranda rights at the time Officer Tates engaged in conduct he should have known was likely to elicit an incriminating response, his initial arrest was invalid, thus tainting the search that uncovered the contraband cocaine.

The defendant asserts that even though he seemingly waived this argument under T.R.A.P. 3(e) by not including it in his motion for a new trial, he is entitled to relief on appeal because the resulting error constitutes plain error. The defendant's assertion is misplaced. Because the remedy the defendant seeks is dismissal of the case rather than a new trial, this issue need not have been raised in a motion for new trial in order to preserve it for appellate review. State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994)(waiver under T.R.A.P. 3(e) is inapplicable when the issue, if found to be meritorious, would result in dismissal of prosecution).

Even so, we find no error. The test for determining whether a suspect is in

3

custody is "whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996). Here, the record reflects that when Officer Tates initially approached the defendant, he told him he was detaining him and transporting him back to 607 Peabody in order to conduct a domestic disturbance investigation. Although the defendant was handcuffed and placed in the back of a police patrol car, the return ride to 607 Peabody was only approximately one block in length and the defendant was released from the handcuffs and the patrol car when a back-up officer arrived at the scene.

The record reflects that Officer Tates properly conducted an investigatory stop and detention of the defendant. Officer Tates testified that while he was on routine patrol, he happened upon circumstances that led him to believe a domestic disturbance was in progress. He testified that when he stopped his patrol car, the defendant fled the scene and the women confirmed that the defendant was causing a disturbance. This evidence establishes that Officer Tates had a reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed, thus justifying the investigatory stop and detention. See State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997).

Further, once the defendant was detained, Officer Tates observed him digging his hands into his front pockets. Officer Tates testified, "As a rule of thumb, for officer's safety, we generally don't allow people to put their hands in their pockets." Having a reasonable suspicion that the defendant might be armed, then, Officer Tates was justified in patting down the defendant's outer clothing so that he could continue "to

pursue his investigation without fear of violence." Bridges, 963 S.W.2d at 493 (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)). Under the "plain feel" doctrine, an officer

4

may seize contraband when the officer's tactile perception gives him or her probable cause to believe, prior to seizure, that the object felt is contraband. Id. at 494. Here, the record does not indicate that Officer Tates had probable cause, based only on his sense of touch, to believe that the bulge he felt in the defendant's pocket was contraband. In other words, there is no evidence that feeling the bulge in the defendant's pocket made it immediately apparent to Officer Tates that the bulge was contraband. Still, Officer Tates did not violate the "plain feel" doctrine because he did not seize the bags of marijuana from the defendant's pocket. Rather, he simply asked the defendant what he had in his pockets, at which point the defendant voluntarily produced the bags of marijuana. Once the defendant handed the contraband over to Officer Tates, Officer Tates had probable cause to arrest the defendant for marijuana possession. Thus, contrary to the defendant's argument, the defendant's arrest (and subsequent search incident to arrest, which uncovered the cocaine) was valid.[1]

The defendant also argues that the trial court erred in denying alternative sentencing on his cocaine charge. At the conclusion of the sentencing hearing, the trial court found the defendant to be a Range I standard offender subject to a sentence of eight to twelve years. See T.C.A. § 40-35-112(a)(2). The trial court found the following three enhancement factors: (1) that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (8) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and (13) that the felony was committed while the defendant was on probation. See T.C.A. § 40-35-114(1), (8), (13)(C). The trial court also found one mitigating factor "arguably" applied, that is, that the defendant's criminal conduct neither caused nor threatened serious bodily injury. See T.C.A. § 40-35-113(1). Determining that the defendant's history of criminal

---

[1]The State argues that by pleading guilty to the marijuana charge, the defendant validated his arrest and thus the search incident to the arrest was also valid. No authoritative citations are offered to support this argument. We decline to consider the State's argument or adopt its position in this case, given that the defendant's arrest was clearly valid.

5

convictions made a community corrections sentence inappropriate, the trial court sentenced the defendant to eight years in the Department of Correction.

When a defendant complains of his or her sentence, we must conduct a de novo review with a presumption of correctness. T.C.A. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments.

Here, the defendant argues that enhancement factor (8) is inapplicable in this case because the only proof of an unwillingness to comply with the terms of community-based release is that he committed the instant offense while on probation for a prior case. See State v. Hayes, 899 S.W.2d 175, 185-86 (Tenn. Crim. App. 1995)(factor (8) does not apply unless a previous history of unwillingness is shown; where probation was violated by the offense underlying the current conviction, enhancement factor (13), not (8), is appropriate). Although the record suggests that the defendant may have previously violated the terms of release in the community well before he committed the instant offense, we are reluctant to so conclude because the record is rather unclear on this point.

Nevertheless, even assuming that the defendant's contention is correct, the record amply supports the application of enhancement factors (1) and (13). Because possession of over one-half gram of cocaine with the intent to sell or deliver is a Class

B felony, see T.C.A. § 39-17-417(c)(1)(Supp. 1998), the defendant is not presumed a favorable candidate for alternative sentencing. T.C.A. § 40-35-102(6). Moreover, as the defendant admits in his appellate brief, measures less restrictive than confinement have

6

recently been applied unsuccessfully to the defendant. See T.C.A. § 40-35-103(1)(C). This, in conjunction with the defendant's previous history of criminal convictions and criminal behavior, indicates that the defendant's potential for rehabilitation is poor. See T.C.A. § 40-35-103(5). Given these circumstances, denial of alternative sentencing seems appropriate.[2]

Finding no merit to the defendant's contentions, we affirm his conviction and sentence.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
JOE G. RILEY, Judge

_____
THOMAS T. WOODALL, Judge

---

[2]The State relies upon State v. Dykes, 803 S.W.2d 250 (Tenn. Crim. App. 1990), for the contention that it need not demonstrate a need for deterrence because the sale or use of narcotics is "deterrable per se," and deterrence supports denial of alternative sentencing. We point out that after the Dykes opinion, the Tennessee Supreme Court authored State v. Ashby, 823 S.W.2d 166, 170 (Tenn. 1991), a drug case, in which the court specifically stated, "The finding of deterrence cannot be conclusory only but must be supported by proof."