IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 11, 2001

## STATE OF TENNESSEE v. RONALD COX

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-02650 and -02770     Joseph B. Dailey, Judge**

---

**No. W2000-02238-CCA-R3-CD - Filed November 29, 2001**

---

The defendant, Ronald Cox, was found guilty of robbery following a jury trial in the Shelby County Criminal Court. In this appeal, he raises three issues: (1) whether the evidence is sufficient to support his conviction; (2) whether the trial court erred by denying his request to instruct the jury on the lesser-included offense of theft; and (3) whether the trial court erred in its answers to questions submitted to the trial court during jury deliberations. Defendant is not entitled to relief on the first and third issues. However, under the recent Tennessee Supreme Court decision in State v. Bowles, 52 S.W.3d 69 (Tenn. 2001), we hold that the trial court committed reversible error by failing to include the lesser-included offense of theft in the charge to the jury. Therefore, we reverse Defendant's conviction and remand the case for a new trial.

### Tenn. R. App. P. 3 Appeal as of Right;
### Judgment of the Criminal Court Reversed and Remanded for New Trial.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and ROBERT W. WEDEMEYER, JJ., joined.

Charles E. Waldman, Memphis, Tennessee, for the appellant, Ronald Cox.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual Background

Robert Landshof, the victim in this case, is the owner of Real Furniture Gallery, a retail store, located on Summer Avenue in Memphis, Tennessee. At approximately 6:00 p.m. on September 3, 1998, Landshof was working at the store by himself when he observed Defendant and another man enter the store and begin to look around in a "suspicious" manner. Landshof asked the men whether they needed help, and they replied that they "just wanted to look around." After a while, Defendant

and his accomplice (who was never identified at trial) went outside the store to a covered patio area where certain items, including nine-by-six foot oriental rugs, were displayed for sale.

As Landshof watched, the two men each began to roll up separate rugs (worth five hundred dollars each), which they had taken from the display rack. He went outside to confront Defendant and his accomplice. Landshof carried a small piece of furniture in his hand and asked the men "what they thought they were doing." A hostile verbal exchange followed, during which Defendant and the other man said "F--- you" to Landshof.

Landshof instructed the men to drop the rugs. He grabbed the end of the rug being handled by Defendant (meanwhile, dropping the piece of furniture in his hand), but was unsuccessful in his struggle to gain control of the rug and threw it onto the ground. Defendant then pushed Landshof, attempting to knock him down. Undeterred, Landshof moved to the opposite side of the display rack where Defendant's accomplice was still trying to roll up the other rug. The accomplice struck Landshof on the side of his head and Defendant approached him again, trying to knock him out of the way. Landshof became stuck between the two men, struggling for control of a rug, and being "knocked back and forth." At this point, Landshof dropped the rug and ran back into the store, yelling "I'm going to call the police." Landshof suffered a swollen ear as a result of the altercation, which took place just outside the front door of his business.

The entire front portion of the store is a plate glass window, and Landshof was able to observe Defendant and his accomplice while he reached to use the telephone. The men initially started to leave when Landshof dropped the rug, but then turned around to retrieve both rugs just as Landshof dialed "911." Landshof dropped the telephone before anyone answered, and he pursued the men.

The men took the rugs to a Chevrolet Blazer (driven by a woman who was also not identified), and got into the car with them. As the Blazer crossed the parking area, both of the back doors to the vehicle were still open and both ends of the rugs were sticking out. By the time the Blazer pulled onto Summer Avenue, the perpetrators had folded the rugs to fit inside the Blazer.

Landshof got into his vehicle and began chasing the Blazer. Part of the chase occurred on I-240. During the chase, first one rug, then the other, was thrown out of the Blazer. Eventually, the Blazer left the interstate and drove into a residential area, where it stopped. Landshof stopped his vehicle about fifty feet behind the Blazer. One of the men jumped out and began approaching Landshof, who quickly threw a can of green paint toward him. Paint was splattered on the road and the Blazer. The man returned to the Blazer, and the chase continued until Landshof pulled up beside the vehicle containing Defendant. Suddenly, the Blazer veered into Landshof's vehicle, which tore off the right front fender and blew the right front tire, temporarily disabling it. The Blazer got away. Landshof changed the flat tire and returned to his store.

During the chase, Landshof was able to view Defendant sitting in the back seat of the Blazer, on the driver's side, and he obtained the Blazer's registration tag number. Defendant had rented the

Blazer from Alamo Car Rental. Landshof identified Defendant at trial. He also identified Defendant from a photographic lineup shown to him by the police on the day after the crime.

## Analysis

### I. Sufficiency of the Evidence

Defendant's challenge to the sufficiency of the evidence is based upon his assertions that the State failed to prove beyond a reasonable doubt that the taking of the rugs was done by violence preceding the act or contemporaneous thereto.

Tennessee Code Annotated section 39-13-401 defines robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." The indictment in this case alleged that Defendant "did unlawfully, knowingly, and by violence, obtain from the person of ROBERT LANDSHOF, oriental rugs . . . ."

In State v. Owens, 20 S.W.3d 634 (Tenn. 2000), our supreme court held that "the use of violence or fear *must precede* or be contemporaneous with the taking of property from the person to constitute the offense of robbery . . . ." Id. at 641 (emphasis added).

Defendant cites Owens as authority that the proof was insufficient to support his conviction. In Owens, the defendant entered a retail store, took an article of clothing, and left the store without paying for it. A supervisor and a security guard began to chase the defendant. When the defendant was about to be caught by the supervisor, the defendant dropped the clothing onto the ground, pulled out a box cutter, and walked away. The supreme court reversed the conviction for robbery and modified the judgment to show a conviction for theft, because the violence used by the defendant did not precede, nor was it contemporaneous with, the taking of the clothing.

This situation is not analogous to the case sub judice, where the violence clearly did not occur *after* the taking of the property. Landshof was struck, pushed, and "knocked back and forth" by Defendant and his accomplice prior to and contemporaneously with the taking of the rugs.

Defendant also argues that the actions of Defendant and his accomplice did not constitute "violence." In State v. Fitz, 19 S.W.3d 213 (Tenn. 2000), our supreme court defined "violence" (as that term is used in the statute defining robbery) as "physical force unlawfully exercised so as to damage, injure or abuse." Id. at 217. Clearly, there was sufficient evidence to prove beyond a reasonable doubt the existence of "violence." Defendant is not entitled to relief on this issue.

### II. Lesser-Included Offense

Defendant asserts that the trial court committed reversible error by declining to charge theft as a lesser-included offense of robbery. Based upon the recent case of State v. Bowles, 52 S.W.3d 69 (Tenn. 2001), we agree.

After noting that theft is unquestionably a lesser-included offense of robbery, the supreme court in Bowles stated that the issue to be resolved related to

> the second inquiry of the [State v. Burns, 6 S.W.3d 453 (Tenn. 1999)] analysis, whether the evidence, viewed liberally in a light most favorable to a finding of the lesser-included offense, is such that reasonable minds could find the lesser-included offense, and whether the evidence is legally sufficient to support a conviction for the lesser-included offense.

Bowles, 52 S.W.3d at 79-80 (citing Burns, 6 S.W.3d at 469).

The supreme court held in Bowles that the evidence was sufficient to sustain the defendant's conviction of robbery. The Court reasoned that, since theft must be proven in order to sustain a conviction for robbery, the State necessarily proved theft. After concluding that the defendant need not "demonstrate a rational basis for acquittal on the robbery charge before theft could be submitted to the jury as a lesser-included offense," id. at 80, the court held that a defendant in such cases must *merely* "demonstrate that evidence *also exists* which *rational* minds could accept as to the offense of theft." Id. (emphasis added).

In Bowles, the following proof supported the defendant's conviction for robbery of Thomas Dobbs (the victim in that case):

> (1) after entering Dobbs' home, the defendant went into Dobbs' bedroom and slung Dobbs' wife (who had just entered the room) onto the floor of an adjoining bedroom;
>
> (2) the defendant then attempted to rape Dobbs' wife;
>
> (3) Dobbs suffered from severe emphysema and was unable to walk without assistance--he was in his bed when the defendant entered his bedroom;
>
> (4) the defendant swept his arm across the top of a chest of drawers and knocked off a clock, some pictures, and the top of Dobbs' breathing machine;
>
> (6) the defendant then picked up a pair of pants which were lying on Dobbs' bed, took out a billfold, and left through the back door.

See id. at 72.

We have thoroughly set forth the facts in the case sub judice. Based upon the ruling in Bowles, it is clear that the trial court erred by not charging the lesser-included offense of theft. Evidence does exist in this case which rational minds could accept as to the offense of theft. Also, as in Bowles, the jury in the instant case did not have the opportunity to consider an "intermediate" lesser-included offense. Only robbery was charged to the jury. The error was therefore reversible

error, requiring us to reverse the conviction for robbery and remand the case for a new trial. We also observe that, under <u>Bowles</u>, all appropriate lesser-included grades of theft (not to be confused with the now disregarded "lesser grade" offenses discussed in <u>State v. Trusty</u>, 919 S.W.2d 305 (Tenn. 1996)) should be charged by the trial court at the new trial. <u>See</u> Tenn. Code Ann. § 39-14-105 (1997).

## III. Supplemental Instructions to the Jury

Defendant argues on appeal that the trial court also erred in its answer to questions posed by the jury after deliberations had begun. However, Defendant made no objection at the time the trial court answered the jury's questions. Moreover, this precise issue was not raised in the motion for new trial, although Defendant included in the motion factual allegations that the jury had questions during deliberations and that the trial court answered the questions.

Failure to object results in waiver of the issue on appeal. Tenn. R. App. P. 36(a); <u>see</u> <u>State v. Thompson</u>, 36 S.W.3d 102 (Tenn. Crim. App. 2000). Likewise, failure to specifically include the issue in the motion for new trial results in waiver. Tenn. R. App. P. 3(e); <u>see</u> <u>State v. Keel</u>, 882 S.W.2d 410 (Tenn. Crim. App. 1994). Defendant is not entitled to relief on this issue.

### Conclusion

Defendant waived any issue regarding the trial court's response to the jury's questions during deliberations. The evidence was legally sufficient to sustain the conviction for robbery. However, the evidence, by necessity, was therefore also legally sufficient to sustain a conviction of theft. Evidence exists which rational minds could accept as to the offense of theft. The jury was given a charge only as to robbery, without the option to consider any lesser-included offenses. Therefore, the trial court committed reversible error. Accordingly, the judgment of the trial court is reversed, and this case is remanded for a new trial.

_____

THOMAS T. WOODALL, JUDGE