IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MAY 1998 SESSION



FILED

July 8, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 02C01-9711-CR-00452 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. BERNIE WEINMAN, |
| ANDERSON D. CURRY, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Rape of a child) |

FOR THE APPELLANT:          FOR THE APPELLEE:


**A C WHARTON, JR.**
District Public Defender

**SHERRY BROOKS**
Asst. Public Defender
  -At Trial-

**WALKER GWINN**
Asst. Public Defender
201 Poplar Ave., Suite 201
Memphis, TN 38103
  -On Appeal-

**JOHN KNOX WALKUP**
Attorney General & Reporter

**CLINTON J. MORGAN**
Counsel for the State
425 Fifth Ave., North
Cordell Hull Bldg., Second Fl.
Nashville, TN  37243-0493

**JOHN W. PIEROTTI**
District Attorney General

**THOMAS HOOVER**
Asst. District Attorney General
201 Poplar Ave., Suite 301
Memphis, TN 38103

OPINION FILED:_____

**AFFIRMED**

**JOHN H. PEAY,**
Judge

# O P I N I O N

The defendant was indicted in December 1996 for rape of a child. A Shelby County jury found him guilty and the trial court sentenced him to twenty years in the Tennessee Department of Correction. In this appeal as of right, the defendant argues that the evidence is insufficient to support his conviction and that the trial court erred when it admitted into evidence a chart depicting the victim's injuries. The defendant also argues that his sentence is excessive. After a review of the record and applicable law, we affirm the judgment of the court below.

Because the defendant has challenged the sufficiency of the evidence, a detailed account of the facts is necessary. In September of 1996, the victim, C.R.[1] was living with her mother, her younger sister, and her mother's boyfriend, the defendant. C.R. testified that on Sunday, September 15, 1996, she and her sister had been at home with the defendant while their mother was at work. She stated that she had planned to take a bath and then go to the store with some friends. She went into the room shared by her mother and the defendant so that she could get a towel. When she entered the room, the defendant asked her to play a card game with him. She agreed but when she started to leave, the defendant asked her to watch television with him and then began tickling her.

C.R. testified that after the tickling, the defendant pulled her on top of him. He then asked her, "Want to do this?" and she said "No." She said she knew what "this" meant because the defendant had pulled her on top of him. She testified that the defendant had then "pulled [her] pants out of the way and stuck his penis into [her]

---

[1]The policy of this Court is to withhold the identity of young children involved in sexual abuse cases, identifying them only by their initials. See State v. Schimpf, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

vagina." She also stated that it had hurt when the defendant did this. However, she testified that she had not seen the defendant's penis nor had she seen him unzip his pants. She testified that she was not sure the defendant had penetrated her with his penis but that she knew something had been put inside of her and that the defendant had done it.

Following this incident, C.R. took a bath. She then left the house to meet a friend. When she met her friend, C.R. told her what had happened, and she and her friend decided to go to a nearby police station. At the station, she told officers what had happened and she was taken to a nurse for an examination.

On cross-examination, C.R. testified that she had first met the defendant in June of that year. She said he had several pieces of furniture in her house but she denied getting angry when the defendant told her he had planned to remove the furniture. She further denied arguing with the defendant on the day of the incident about house cleaning duties. However, she did testify that she and the defendant had argued on a previous occasion about that topic.

C.R. further testified that the defendant had stayed with her and her sister on several occasions. She also stated that when she left the house after taking her bath, she left her sister at the house. She said that the defendant had never before touched her in an inappropriate way.

Sandra Anderson, a family nurse practitioner and sexual assault nurse examiner for the city of Memphis, testified that she had examined C.R. on September 15, 1996. She performed a physical exam and took C.R.'s statement about the incident. The examination revealed slight bleeding and a laceration in an area below the hymen. Anderson explained that the bleeding meant that a trauma or acute injury had occurred

3

within the past twenty-four hours to that area. She further testified that she was unable to say exactly what had caused the trauma but that she could say it had been caused by some form of penetration to that area. However, she testified that she had found no traces of semen on C.R.

Anderson further testified that C.R. had "notches" or "interruptions in the integrity of the hymen" that could have been the result of penetration. However, Anderson stated that the notches could have been caused prior to the time of this incident. She further explained that her examination had revealed rolled hymenal tissue which indicates some prior trauma to the area that had scarred and healed. She said this injury could have been caused by an acute injury and not necessarily by penetration.

The defendant now argues that the State failed to present sufficient evidence of sexual penetration. A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v.

4

Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

"Sexual penetration" is statutorily defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7). In this case, C.R. initially testified that the defendant had "stuck his penis into [her] vagina." She later stated that she was not completely sure that it had been the defendant's penis that had penetrated her but that she knew something had been put inside of her. Anderson's testimony corroborated C.R.'s testimony that she had been penetrated. Anderson found slight bleeding and a recent tear near C.R.'s hymen. While she could not identify the cause of the tear and bleeding, she said that the injury certainly could have been caused by some form of penetration to that area.

We find this evidence to be entirely sufficient. That C.R. could not definitely say that she had been penetrated by the defendant's penis is of no consequence. She could definitely state that she had been penetrated by something and that the defendant had caused the penetration. In addition, physical evidence showed a recent injury to C.R.'s vaginal area. This evidence is certainly sufficient to satisfy the definition of "sexual penetration." The defendant does not challenge any other element of the crime. Thus, we find no merit to his sufficiency challenge.

The defendant next argues that the trial court erred when it admitted into evidence a diagram of C.R.'s genital area. The defendant argues that because the chart also showed past injuries that may have been caused by penetration, the chart was prejudicial and its introduction deprived him of a fair trial.

The chart depicted the "notches" Anderson described during her testimony. It also indicated the bleeding and the rolled hymenal tissue. While Anderson testified that the notches and rolled hymenal tissue were caused by previous injuries, she could not state the nature of this injury. The defendant argues that the chart left the jury with the impression that C.R. had been penetrated before and that he had been the one to do so. To the contrary, Anderson did not say the previous injuries were caused by penetration. Furthermore, C.R. testified that the defendant had never before touched her in an inappropriate manner. Thus, we find no error in admitting the chart into evidence. Also, as pointed out above, the evidence is entirely sufficient to convict the defendant of rape of a child. Thus, if there were an error in admitting the chart, it was certainly harmless beyond a reasonable doubt. T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a).

As his final issue, the defendant argues that his sentence is excessive. The trial court sentenced him as a Range I standard offender to twenty years imprisonment, the presumptive sentence in that range. When a defendant complains of his or her sentence, we must conduct a de novo review with a presumption of correctness. T.C.A. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A portion of the Sentencing Reform Act of 1989, codified at T.C.A.

6

§ 40-35-210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40-35-210.

In addition, this section provides that the midpoint of the appropriate range is the presumptive sentence for Class A felonies. If there are enhancing and mitigating factors, the court must start at the presumptive sentence and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the presumptive in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Act further provides that "[w]henever the court imposes a sentence, it shall place on the record either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40-35-209." T.C.A. § 40-35-210(f) (emphasis added). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. T.C.A. § 40-35-210 comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal.

The defendant specifically argues that the trial court erred when it failed to

7

consider two mitigating factors, that he had been gainfully employed as a security guard and that he had never before been convicted of a felony. He also argues that the trial court erroneously applied several enhancement factors.

The defendant was the only person to testify at the sentencing hearing. He testified that he had been employed as a security patrol for CDA Security for the two and a half years prior to his arrest. He also stated that he had served in the Army for three years and had received an honorable discharge. His prior record included two DUI convictions and at least two other driving offenses. However, the record revealed no prior felonies. The defendant explained that he was on probation for DUI at the time of his arrest in this case. His arrest resulted in a violation of that probation. The defendant further testified that he was sorry about what had happened to C.R. However, he continued to deny having raped her.

Following the hearing, the trial judge announced that he found no mitigating factors but that he did find five enhancement factors. The defendant now argues that the trial court should have considered his work history and his lack of felony convictions as mitigating factors. As this Court has noted before, "Every citizen in this state is expected to have a stable work history if the economy permits the citizen to work, the citizen is not disabled, or the citizen is not independently wealthy." State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994). Thus, we see no reason why the trial court should have considered the defendant's two and one-half years of employment as a mitigating factor. Likewise, we can find no justification for mitigating his sentence based on his lack of felony convictions. Not only is every citizen expected to have a stable work history, but also is expected to refrain from committing any type of crime. We can find no merit to the defendant's argument.

The trial court found the following enhancement factors from T.C.A.

8

§ 40-35-114: that the defendant has a previous history of criminal convictions or criminal behavior (1); that the offense involved a victim and was committed to gratify the defendant's desire for pleasure and excitement (7); that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community (8); that the felony was committed while the defendant was on probation (13); and that the crime was committed under circumstances under which the potential for bodily injury to a victim was great (16). The defendant challenges the application of all the above with the exception of factor one. This factor clearly applies as the defendant has been convicted of DUI twice and has at least two other driving related convictions.

As for factors eight and thirteen, the State concedes that these factors are not applicable. The defendant's previous convictions were for misdemeanors only, and factor thirteen requires a defendant to have been on release status from a prior felony conviction. Similarly, there was no evidence that the defendant did not comply with the conditions of his probation. His final appointment with his probation officer was missed because he was incarcerated. We agree with the defendant and the State that these two factors were erroneously applied.

We also find that the trial court erroneously applied factor seven, that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. While this factor may be applied in rape cases, the State has "the burden of demonstrating that the rape was sexually motivated (done to gratify the Defendant's desire for pleasure or excitement)," which the State did not do in this case. State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993).[2] Thus, this factor cannot apply.

---

[2]The State's brief argues that this factor should be applied because "[t]here is no other apparent reason for [the defendant's] actions." To the contrary, there could be an infinite number of other reasons and we remind the State that if the State wishes to rely on this or any other factor, the State must offer evidence, not conclusory statements, in support of its argument.

As to factor sixteen, that the offense was committed under circumstances under which the potential for bodily injury to the victim was great, we find that this factor was also erroneously applied. While the nurse practitioner did testify that C.R. had some evidence of an injury, the penetration by the defendant did not pose great potential for bodily injury nor were the injuries suffered by C.R. particularly great. See State v. Carico, __ S.W.2d __ (Tenn. 1997); State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996)(rejecting this factor where a young boy had been orally and anally penetrated).

The State suggests that enhancement factor four, that the victim was particularly vulnerable, and factor fifteen, that the defendant abused a position of private trust should have been applied. While the better practice is for the trial court to carefully consider all relevant and possible sentencing factors, this Court is authorized to consider any enhancement (or mitigating) factors supported by the record. Adams, 864 S.W.2d at 34. As to factor four, the Supreme Court has stated that "vulnerability enhancement relates more to the natural physical and mental limitations of the victim than merely to the victim's age." Adams, 864 S.W.2d at 35. In order for this factor to be applied, the State must offer some proof as to how this victim was particularly vulnerable. Because the State failed to do so, its suggestion that this factor be applied is misplaced.

We do, however, agree with the State that the trial court should have applied factor fifteen, that the defendant abused a position of private trust. C.R. testified that her mother had left her and her sister in the defendant's care and that the defendant had stayed alone with the two girls on previous occasions. The Supreme Court has explained that in applying this factor, a court must determine "whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith." Kissinger, 922 S.W.2d at 488. C.R.'s mother had entrusted the defendant with the care of her two daughters, and the defendant had served in this role prior to this incident. Thus, it is clear that the defendant abused his position of private trust. Enhancement

10

factor fifteen should have been applied.

In summary, we find that the applicable enhancement factors are factor one, that the defendant has a previous history of criminal convictions or behavior, and factor fifteen, that the defendant abused a position of public trust. T.C.A. § 40-35-114. We further find that no mitigating factors are applicable. T.C.A. § 40-35-113. The trial court had sentenced the defendant to twenty years, the presumptive sentence for a Class A felony, despite the court's application of four enhancement factors. While the application of three of the factors was erroneous, we cannot find that sentencing the defendant to the presumptive sentence was an abuse of discretion. Thus, we affirm the defendant's sentence of twenty years in the Tennessee Department of Correction.

For the foregoing reasons, the judgment of the court below is affirmed.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
PAUL G. SUMMERS, Judge


_____
THOMAS T. WOODALL, Judge