# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
July 11, 2000 Session

## STATE OF TENNESSEE v. SHUNNA DEMETRIA HILLIARD

**Appeal from the Circuit Court for Henry County**
**No. 12846, Julian P. Guinn, Judge**

---

**No. W1999-00483-CCA-R3-CD  - Filed March 30, 2001**

---

Defendant appeals her conviction of two counts of sale of cocaine, both Class C felonies.  She received sentences of four (4) years on each count, running concurrent to one another, and was ordered to pay a $100,000.00 fine on each count.  Defendant contends that the evidence is insufficient to support the convictions, and that the trial court erred in failing to sentence her to the minimum sentence and failing to grant alternative sentencing.  The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**.

CORNELIA A. CLARK, SP. J., delivered the opinion of the court, in which DAVID H. WELLES, J. and ALAN E. GLENN, J, joined.

Sam Wallace, Sr., Nashville, Tennessee, for the appellant, Shunna Demetria Hilliard.

Paul G. Summers, Attorney General & Reporter, Mark E. Davidson, Assistant Attorney General, Robert "Gus" Radford, District Attorney General, Steve Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On June 15, 1998, Lieutenant James R. "Ricky" Kelly of the Union City Police Department was assigned to the 27th Judicial District Violent Crime & Drug Task Force, assisting Paris detective Donnie Blackwell in an undercover drug operation in Henry County.  His car was equipped with video recording equipment.  About 7:40 p.m. on that evening Officer Kelly drove to the playground in the Depot Hill area, where he saw a black male and a black female sitting on a bench.  Officer Kelly knew that the black male's last name was Jones.  He approached Jones and asked him to "hook him up", which meant that he was requesting to purchase cocaine.  Jones asked what he wanted and the officer said he wanted a "fifty", which indicated he wished to buy a rock of cocaine worth $50.00.

In response to this request Jones walked over to a heavy-set black female nearby. Jones and the female, identified by Kelly as the defendant, turned their backs to him and made an exchange of some sort. Without approaching or speaking to anyone else, Jones then walked back to Officer Kelly's car and gave him a rock of crack cocaine. The officer handed Jones three $20.00 bills and asked for change. Jones then went back to the defendant and gave her the money. In turn she gave him two $5.00 bills which he brought back to the officer. Kelly then left the scene.

Lieutenant Kelly returned to Officer Donnie Blackwell and turned the drugs over to him. He also reviewed the audio and videotape with Blackwell. The officers then installed new tapes and checked the serial numbers of new bills for use in a second transaction.

About forty-five minutes later, Officer Kelly drove back to the same Depot Hill area, where he saw Jones walking up Depot Street with the black female who had earlier been sitting with him on the bench. Officer Kelly identified that woman as Kim Jackson. Jones waved Kelly down and asked him if he needed "some more". The officer stated that he did. Jones and Jackson got into Kelly's car with him and directed him around the block to the northwest corner of the playground. Jones then got out of the car and again approached the defendant. He returned to the officer with a rock of cocaine worth $50.00. The officer asked for $100.00 worth. Jones approached the defendant, participated in another exchange with her while their backs were turned, and returned to the officer. After unsuccessfully attempting to convince the officer that one rock was worth $100.00, Jones produced two rocks. The officer purchased both rocks of cocaine and left.

Lieutenant Kelly identified videotapes of each of the transactions. The defendant was not easily visible in the first videotape, but was more visible in the second videotape. Kelly testified that the defendant was involved in both transactions.

Detective Donnie Blackwell testified that he drove to the Depot Hill park area about twenty-seven minutes after the second drug transaction and saw the defendant standing in the park about ten feet from the location where she was viewed on the videotape during the second drug transaction. Blackwell noticed that the defendant was wearing the same clothes that he had seen her wearing when he reviewed the earlier videotape. He testified that he knew the defendant personally and had also known her mother for years. Officer Eric Long also testified that he knew the defendant personally and had recognized her while viewing the videotapes.

On the day after the purchases were made, Detective Blackwell produced a photographic lineup for Lieutenant Kelly. Each of the five photographs in the lineup showed a heavy-set black female. Lieutenant Kelly picked the defendant out of the lineup. Kelly also testified that he had seen the defendant in person on several occasions since the purchases, and that he was able to identify her each time as the black female with whom Jones deal for the drugs.

Special Agent Kay Sherriff of the Tennessee Bureau of Investigation testified that the drugs recovered after the purchases tested positive for cocaine in the amounts of 0.2 and 0.4 grams.

The defendant did not present any proof.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant first challenges the sufficiency of the convicting evidence. The standard of review for a challenge to the sufficiency of the evidence is whether, after considering all the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Burns*, 979 S.W.2d 276, 286-87 (Tenn. 1998); Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this court will not reweigh the evidence or substitute our own inferences for those drawn by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Instead, on appeal, the state is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom. *Cabbage*, 571 S.W.2d at 835. At this stage, it is the defendant who bears the burden of proving the evidence is insufficient to support the jury's verdict. *State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence, are resolved by the trier of fact, not this court. *Cabbage*, 571 S.W.2d at 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the state, and a presumption of guilt replaces the presumption of innocence. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

The defendant argues that the evidence is insufficient because the videotapes of the transactions are not conclusive. She also asserts that if the police officer truly believed a sale had occurred in his presence he should have arrested her immediately. Officer Kelly explained, however, that he had just begun an ongoing undercover operation which would have been compromised or made impossible if he made an arrest after the first purchase. He also testified that while the camera's distance from the defendant made it impossible to capture a good picture of her, he had on several occasions made an identification of the defendant as the heavy-set woman who accepted the money and provided the cocaine in question. His identification was corroborated by two other officers.

The defendant also argues that because the state elected to proceed with the alternative counts for sale of contraband rather than delivery of contraband, the cases must be dismissed. She relies on the testimony of Officer Kelly that he never spoke to her directly. Defendant finally notes that at the time of her arrest several months after the transaction, she did not have in her possession any of the marked bills that were used for the purchase on the evening in question.

Reviewing the facts in the light most favorable to the state, the evidence establishes that, using another person as intermediary, the defendant on two separate occasions in the same evening accepted money from an undercover police officer and provided crack cocaine for delivery to the officer. Officer Kelly delivered money to Lonnie Jones, who delivered the money to the defendant.

The defendant completed an exchange with Lonnie Jones, and Lonnie Jones returned to the officer with crack cocaine. This occurred on two separate occasions. Sufficient proof existed to allow a rational trier of fact to find beyond a reasonable doubt that this defendant on two separate occasions did knowingly sell cocaine, a Schedule II drug. This issue is without merit.

## II. SENTENCING

Defendant next contends that the trial court erred when it imposed concurrent sentences of four years for each of her Class C felony convictions, and further erred by not permitting alternative sentencing. We disagree.

"When reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with the presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. §40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the defendant's statements, the nature and character of the offense, and the defendant's potential for rehabilitation. Tenn. Code Ann. §§40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169. The defendant has the burden of demonstrating that the sentence is improper. *Id.*

In this case, defendant was convicted of two counts of the Class C felony of sale of cocaine. The sentence for a Range I offender convicted of a Class C felony is three (3) to six (6) years. Tenn. Code Ann. §40-35-112(a)(3). If the court finds that enhancement and mitigating factors are applicable, the court must begin with the minimum and enhance the sentence to reflect appropriately the weight of any statutory enhancement factors. Then the court must reduce the sentence to reflect appropriately the weight of any mitigating factors. Tenn. Code Ann. §40-35-210(e). The weight afforded to enhancement and mitigating factors is left to the discretion of the trial court so long as the court complies with the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989 and its findings are supported by the record. *State v. Hayes*, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995).

The record indicates that in determining to impose the sentence of four (4) years on each count, the trial court found that the following enhancement factors applied: (1) defendant has a history of criminal convictions or behavior in addition to those necessary to establish the appropriate range; (2) defendant was a leader in the commission of an offense involving two or more criminal actors; (4) defendant delivered or sold a controlled substance to a minor within 1,000 feet of a public park; (10) defendant had no hesitation about committing a crime when the risk to human life was high; and (13) that the offenses occurred while the defendant was on probation from a prior felony conviction. Tenn. Code Ann. §40-35-114. The trial court found that no mitigating factors applied.

-4-

The defendant has not specifically challenged any of the enhancement factors applied by the trial court. She argues more generally that enhancement of the sentence from three (3) years to four (4) years was inappropriate because she did not have any prior felony convictions. However, the trial court properly applied enhancing factor (1), noting that she had multiple prior misdemeanor convictions, including six for theft, two for assault, one for possession of marijuana, and one for driving on a revoked license. The application of factor (1) was entirely justified.

The evidence also supports the conclusion of the trial court that the defendant was a leader in the commission of the offenses. She was the person in possession of the drugs and controlled their distribution. She also had control of the money and provided the change for Lonnie Jones, who was the go-between in the purchase. The runner had to go through her to effectuate the sale of the cocaine. Thus, factor (2) also was properly applied.

The state concedes that enhancement factor (4) was improperly applied because, although the sale occurred on a public playground, it was not made to a minor. The state also concedes the misapplication of enhancement factor (10), because there is no specific proof in the record that the risk to human life was high during the course of these sales. We agree.

We find that the trial court also misapplied enhancement factor (13) because, while these felonies were committed at a time when defendant was on probation from a prior conviction, the prior conviction was for a misdemeanor rather than for a felony. However, enhancement factor (8), previous history of unwillingness to comply with the conditions of a sentence involving release in the community, does apply. It is clear from the record that not only were these felonies committed at a time when defendant was on probation for prior offenses, but several of her prior offenses were committed while she was either on bond or on probation as a result of even earlier offenses.

Defendant further contends that the trial court could not consider any enhancement factors because "the state did not move to enhance the punishment of the defendant as provided by law". This argument must fail for two reasons. First, it contains no citation to authority. Therefore, our consideration of this issue is waived. See Tenn. R. Ct. Crim. App. 10(b); Tenn R. App. P. 27(a)(7). Second, the applicable law is actually contrary to the position asserted by defendant. Tenn. Code Ann. §40-35-210 *requires* the court to consider, among other factors, enhancement and mitigating factors. It is not necessary for either party to request that consideration in order to assure that it is given.

Although the defendant argued at the sentencing hearing that several mitigating factors apply, she does not assert in her brief on appeal that the court erred in failing to apply those factors. We agree that no mitigating factors apply in this case.

Even though we hold that the trial court erred in applying some enhancement factors, that finding does not equate to an automatic reduction in sentence. *State v. Keel*, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994). Because we conclude that three enhancement factors are applicable and

that no mitigating factors are applicable, we affirm the imposition of four year sentences on each count.

Finally, defendant contends that she should have received alternative sentencing. Because she was convicted as a standard offender of a Class C felony, she is entitled to the presumption of an alternative sentence. See *State v. Bonestel*, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993); Tenn. Code Ann. §40-35-102(5) and (6). The statutory presumption of an alternative sentence may be rebutted by "evidence to the contrary". See Tenn. Code Ann. §40-35-102(6). Sentences involving confinement must be based on the statutory sentencing considerations of Tenn. Code Ann. §40-35-103(1):

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

The first criterion was properly applied. This defendant has a lengthy history of criminal conduct. Although she has no prior felony convictions, she accumulated ten (10) misdemeanor convictions between the ages of eighteen (18) and twenty-two (22).

Similarly, the trial court properly concluded that measures less restrictive than confinement had been applied unsuccessfully. Of defendant's ten prior misdemeanor convictions, eight were apparently committed while she was on probation or some form of alternative sentencing. The two felony convictions at issue in this action were also committed while the defendant was on probation for a prior misdemeanor conviction.

Finally, the trial court was justified in finding that confinement was necessary to avoid depreciating the seriousness of the offense and to provide an effective deterrent to others. This was not an isolated individual sale. The fact that the defendant was openly operating a drug business while other people moved about on a public playground was significant to the trial court. Detective Blackwell also testified that law enforcement officers had received a number of complaints from people in this neighborhood about public drug dealing and about the fact that children could not play in the park because they were afraid of the drug traffickers. The decision to deny alternative sentencing was justified.

Accordingly, the judgment of the trial court is affirmed in all respects.

_____
CORNELIA A. CLARK, SPECIAL JUDGE