IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 20, 2005

## STATE OF TENNESSEE v. LYLE T. VAN ULZEN and BILLY J. COFFELT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-A-552   J. Randall Wyatt, Jr., Judge**

_____

**No. M2004-02462-CCA-R3-CD - Filed October 31, 2005**

_____

The Defendants, Lyle T. Van Ulzen and Billy J. Coffelt, were each convicted of one count of felony escape, two counts of aggravated assault, and three counts of especially aggravated kidnapping and were each sentenced to an effective sentence of ninety years in prison.  Coffelt now appeals, contending that: (1) the trial court erred in sentencing the Defendant when it found that no mitigating factors applied; and (2) the trial court erred  when it ordered that his sentences run consecutively. Van Ulzen also appeals, contending that the sentence imposed was not justly deserved in relation to the seriousness of the offense and is greater than that deserved under the circumstances.  Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Cindy Burnes, Nashville, Tennessee, for the Appellant, Lyle T. Van Ulzen; and Mike J. Urquhart, Nashville, Tennessee, for the Appellant, Billy J. Coffelt.

Paul G. Summers, Attorney General and Reporter; Rachael E. Willis, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Jim Sledge, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION
### I.  Procedural History

In 2000, both Defendants were convicted of one count of felony escape, two counts of aggravated assault, and three counts of especially aggravated kidnapping for their actions while escaping a maximum security institution.  For each of the three especially aggravated kidnapping

convictions, the trial court sentenced both Defendants as repeat violent offenders to life imprisonment without the possibility of parole. The Defendants appealed their convictions and sentences to this Court, and this Court affirmed the convictions, but we reversed the trial court's finding that the Defendants were repeat violent offenders subject to mandatory life sentences. State v. Lyle T. Van Ulzen and Billy J. Coffelt, No. M2002-01214-CCA-R3-CD, 2003 WL 22116628, at *1 (Tenn. Crim. App., at Nashville, May 13, 2003), *perm. app. denied* (Tenn. Feb. 2, 2004). The case was remanded to the trial court for resentencing on the especially aggravated kidnapping convictions only. State v. Van Ulzen and Coffelt, 2003 WL 22116628, at *1.

## II. Facts

In our opinion on the Defendants' first appeal, the following facts were noted by this Court:

The State's proof established that three correctional officers were working at Unit I of the Riverbend Maximum Security Institution during the early morning hours of December 27, 1998. Unit I consisted of four "pods" that contained prison cells; each cell housed a single inmate. A central "pod" was used as the common area. Also in the unit were a security office, a visitor's gallery, a control room, and a laundry room. Corporal Barry Asberry was in charge of the unit; he was being assisted by Officers Amorelle Williams and Lona Beshears. The Defendants were two of the inmates under their care and supervision.

At about three a.m., the Defendants were released from their cells to perform some work. For about an hour and a half, they worked together in the visitor's gallery waxing the floor. During this time, Officer Williams oversaw their activities. Corporal Asberry was in the security office, and Officer Beshears was upstairs in the control room. The control room contained the remote electronic devices which opened doors in the unit.

At about 4:30 a.m., the Defendants ceased working on the floor and began to work in the kitchen, preparing breakfasts for those inmates who celebrated Ramadan. At about five o'clock, both Defendants appeared at the security office. At this time, both Corporal Asberry and Officer Williams were in the office. Defendant Van Ulzen accosted Corporal Asberry with a homemade knife known as a "shank." Defendant Coffelt grabbed Officer Williams, pinning her arms behind her back. Officer Williams testified that Van Ulzen held the shank to Corporal Asberry's neck and threatened her with it. The Defendants told the officers that, if they cooperated, they would not be harmed. The Defendants took the officers' radios and keys; Coffelt armed himself with a "stun gun" taken from a drawer. The Defendants removed their leg irons, and then handcuffed Officer Williams' hands behind her back. The Defendants also fastened one of the sets of leg irons around Corporal Asberry's hands.

-2-

The Defendants marched the officers to the laundry room, a short distance away. They then had Corporal Asberry radio to Officer Beshears, giving him the code to open the two consecutive doors to the control room. Van Ulzen put on Officer Williams' uniform jacket and covered his head with the hood. Van Ulzen then went upstairs to the control room and opened the first of two doors, which Beshears had unlocked in response to the radio call. Beshears glanced at the security camera and saw the jacket that Van Ulzen was wearing. Thinking that another officer was waiting to be let in the second door, Beshears opened it. Van Ulzen entered the control room and brandished the shank at Beshears. Van Ulzen told Beshears that he would not be hurt if he cooperated.

Van Ulzen escorted Beshears downstairs to the laundry room. The Defendants removed the restraints from Asberry's and Williams' hands and then locked all three officers in the laundry room. The laundry room was locked from the outside and could not be opened from the inside.

The officers heard a lot of noise, and then saw other inmates in the common area. They subsequently saw several inmates, including the Defendants, leaving the unit through the "sally port," a pair of doors that led to the outside. At about 5:30 a.m., Officer William Scott Duncan found the three officers in the laundry room. They were subsequently released from the laundry room by Sergeant Staples.
The prison personnel soon discovered that six inmates had escaped. A ladder had been erected at the perimeter fences and pieces of mattresses had been placed over the razor wire topping the fences. All six inmates were captured within thirty-six hours of their escape.

Defendant Van Ulzen testified at trial, emphasizing that he locked the guards in the laundry room in order to protect them from the inmates he subsequently released from their cells. He testified that he used the shank only to convince the guards to cooperate.

Van Ulzen and Coffelt, 2003 WL 22116628, at *1-2.

Defendant Van Ulzen filed a motion requesting that we consider the appellate record from the Defendants' first appeal. We granted that motion, and we therefore consider the facts presented to the trial court at the Defendants' first sentencing hearing. At the sentencing hearing, Amorelle Williams, one of the victims in the case, testified that she was scared for her and her fellow guard's lives, and she stated that "[e]ven though they said that they [were not] going to hurt us, you know, there was the issue of the other inmates getting out. And I was very afraid." No other witnesses were called at the sentencing hearing.

Defendant Coffelt's presentence report revealed that he was convicted in 1983 as an habitual

offender for assault with intent to commit first degree murder, assault with intent to commit robbery, and he was convicted for escape in 1990. Defendant Van Ulzen's presentence report revealed that he was convicted in 1988 for two counts of arson and two counts of second degree murder.

At resentencing, the trial court sentenced the Defendants to thirty years for each of the especially aggravated kidnapping convictions, and it ordered that those sentences run consecutively, for an effective sentence of ninety years. The trial court found that each Defendant was a Range II offender, based on their prior convictions. The trial court imposed consecutive sentences based on its finding that the Defendants have extensive criminal records, are dangerous offenders whose behavior indicates little or no regard for human life, and have no hesitation about committing crimes in which the risk to human life is high. It is from this order that both Defendants currently appeal.

### III. Analysis

On appeal, Defendant Coffelt contends that: (1) the trial court erred when it found no mitigating factors during sentencing; and (2) that the trial court abused its discretion when it ordered his sentences to be served consecutively. Defendant Van Ulzen contends that the sentence imposed was not justly deserved in relation to the seriousness of the offense and is greater than that deserved under the circumstances.

### A. Mitigating Factors

Defendant Coffelt contends that the trial court should have reduced his sentence based on the applicability of the following mitigating factors: (1) the Defendant's criminal conduct neither caused nor threatened serious bodily injury; (2) the Defendant played a minor role in the commission of the offense; and (3) the Defendant attempted to shield the victims from harm by third parties. Tenn. Code Ann. §§ 40-35-113(1),(4), & (13) (2003).

The State argues that this issue was waived by Defendant Coffelt because he did not properly object at the sentencing hearing and failed to raise the issue in his motion for a rehearing. See Tenn. R. App. P. 3(e) & 36(a); see also State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). However, even if the defendant does not file a written notice of mitigating factors prior to sentencing, if there is evidence of such factors in the record, the issue is not waived. The Criminal Sentencing Reform Act of 1989 supplies the court with guidelines for sentencing considerations.

> (b) To determine the specific sentence and the appropriate combination of sentencing alternatives that shall be imposed on the defendant, the court *shall* consider the following:
> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the enhancement and

mitigating factors in §§ 40-35-113 and 40-35-114; and

(6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210 (2003) (emphasis added). The Sentencing Commission's Comments to this section are especially helpful in determining the scope of what the court shall consider:

> The provisions of subsection (b) require the court to consider all of the proof at the trial, the presentence report, the principles of sentencing, the nature and characteristics of the criminal conduct involved, evidence and information offered by the parties on the mitigating and enhancement factors, and any statement that the defendant desires to make in his own behalf about sentencing. This subsection permits the court the greatest latitude in considering all available information in imposing the appropriate sentence and sentence alternative.

Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts. The Sentencing Commission's Comments are clear that the trial court is required to take into account all of the evidence presented at the trial and the sentencing hearing. Therefore, if evidence of a mitigating factor or factors is presented at the trial or the sentencing hearing, the trial court is required to consider them in the sentencing process. Thus, the issue is not waived, and we will review the matter on its merits.

We begin our analysis by noting that appellate review of the length, range, or manner of service of a sentence is de novo. Tenn. Code. Ann. § 40-35-401(d) (2003). In conducting its de novo review, this Court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code. Ann. § 40-35-102, -103, -210 (2003); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is upon the appellant to demonstrate the impropriety of his sentences. Tenn. Code. Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this Court will accord the trial court's determinations a presumption of correctness. Tenn. Code Ann. § 40-35-401(d); Ashby, 823 S.W.2d at 169.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The weight assigned to enhancement and mitigating factors is generally left to the trial court's discretion. See generally State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997). While the trial court did not specifically address any of the mitigating factors raised by Defendant Coffelt on appeal, the trial court did state that it found that no mitigating factors applied, indicating that the trial court had in fact considered whether any mitigating factors did apply. Consequently, it appears that the trial court considered mitigating factors, but it chose to give them little, if any, weight. Again, the weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our Code, and as long as its findings are supported by the record. State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). After reviewing the trial court's decision not to reduce Defendant Coffelt's sentence based on the evidence in the record, we conclude that the evidence does not preponderate against the trial court's decision.

Although we find that the evidence does not preponderate against the trial court's finding that there were no mitigating factors in this case, we note that the sentences it imposed for the Class A felony offense of especially aggravated kidnapping–30 years on each–are below the presumptive minimum for those offenses. See Tenn. Code Ann. § 40-35-210(d). The Code states, "Should there be enhancement but no mitigating factors for a Class A felony, then the court shall set the sentence at or above the midpoint of the range." Tenn. Code Ann. § 40-35-210(d). Accordingly, as a Range II offender, with a range of 25-40 years, the Defendants' presumptive sentence was 32 ½ years, assuming no enhancement or mitigating factors. Thus, while the trial court found enhancement factors, but no mitigating factors, the Defendant in fact received the benefit of a mitigated sentence.

## B. Defendant Coffelt's Consecutive Sentences

Defendant Coffelt's next contention is that the trial court abused its discretion when it ordered his sentences to run consecutively. Specifically, the Defendant asserts that the trial court abused its discretion when it cited the following factors in support of this decision: (1) that the Defendant had no hesitiation about committing a crime in which the risk to human life was high; and (2) that the Defendant was convicted of a crime wherein the potential for bodily injury to the victims was great.

We begin by noting that it is within the sound discretion of the trial court whether to impose consecutive or concurrent sentences. See State v. Adams, 973 S.W.2d 224, 230-31(Tenn. Crim. App. 1997). A Tennessee court may order consecutive sentences in cases where it finds any of seven statutorily enumerated criteria to be applicable "by a preponderance of the evidence." Tenn. Code Ann. § 40-35-115(b). The seven criteria are:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to

sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6) The defendant is sentenced for an offense committed while on probation; or
(7) The defendant is sentenced for criminal contempt.

The trial court based his imposition of consecutive sentences on the following factors: (1) the Defendant was an offender whose record of criminal activity was extensive; and (2) the risk to human life was high and the Defendant was convicted of a crime wherein the potential for bodily injury to the victims was great. As previously articulated, these grounds are appropriate considerations for imposing consecutive sentencing. See Tenn. Code Ann. § 40-35-115(b)(2) & (4). The record indicates that Defendant Coffelt has an extensive record of criminal activity, including assault with intent to commit first degree murder, assault with intent to commit robbery, and escape. Accordingly, we conclude that the evidence does not preponderate against the trial court's judgment that consecutive sentences are warranted because Defendant Coffelt is an offender whose record of criminal activity is extensive.

In order to impose consecutive sentences based upon a finding that a defendant is a dangerous offender, a court must also find that: (1) the sentences are necessary in order to protect the public from further misconduct by the defendant and; (2) "the terms are reasonably related to the severity of the offenses." Wilkerson, 905 S.W.2d at 938; see also State v. Lane, 3 S.W.3d 456, 461 (Tenn.1999). In applying the dangerous offender factor, the trial court remarked, "The Court finds that under the guidelines in Wilkerson v. State, the sentences imposed are reasonably related to the severity of the offenses, and the sentences are necessary to protect the public from further criminal activity by the Defendants." After a thorough review of the record we conclude that the evidence does not preponderate against the trial court's findings, and thus we affirm Defendant Coffelt's sentence.

### C. Defendant Van Ulzen's Consecutive Sentences

Defendant Van Ulzen asserts that the trial court erred in sentencing him to consecutive sentences, contending that the total length of the sentence is not justly deserved in relation to the seriousness of the offense and is greater than that deserved under the circumstances. See State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). The State argues that, the evidence does not preponderate against the trial court's imposition of consecutive sentences based on its finding that the Defendant is a dangerous offender whose behavior indicates little or no regard for human life,

and no hesitation about committing crimes in which the risk to human life is high, and he is an offender whose record of criminal activity is extensive. See Tenn. Code. Ann. § 40-35-115(b)(2) & (4).

Defendant Van Ulzen's contention that the total length of his sentence is not justly deserved in relation to the seriousness of his offense is essentially the same as Defendant Coffelt's claim that the trial court abused its discretion in ordering his sentences to run consecutively. As such, our analysis remains unchanged. After reviewing the record, we conclude that the evidence does not preponderate against the trial court's findings that Defendant Van Ulzen's sentence is justly deserved in relation to the seriousness of the offense he committed. The Defendants used a deadly weapon during an escape from a maximum security correctional facility, endangering the lives of at least three correctional officers and facilitating the escape of four other inmates. In our view, the imposition of consecutive sentences pursuant to Tennessee Code Annotated section 40-35-115(b)(4) is proper.

Further, as discussed above, consecutive sentencing is permissible upon finding any one of the qualifying criteria, and on appeal, the Defendant does not dispute the trial court's finding that he has an extensive criminal history. Tenn. Code Ann. § 40-35-115(b)(2). The record reflects that the Defendant's criminal history consists of multiple felony convictions, warranting the trial court's finding that the Defendant's criminal history is extensive. We conclude that the evidence does not preponderate against the trial court's finding that the sentence is appropriate in light of the Defendant's extensive record of criminal activity, which includes two counts of arson and two counts of second degree murder.

## IV. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE